Good morning, ladies and gentlemen. Our first case for this morning will be Michael Johnson v. Pushpin Holdings, LLC. Mr. Durie? I please the court. The second amended complaint was dismissed under Rule 12b-6. The issue is whether it states a plausible claim for relief for violation of the Illinois Consumer Fraud Act or malicious prosecution or abusive process. The basic facts are that Pushpin Holdings, acting in concert with the other defendants, filed 3,000 small claims cases in Cook County against out-of-state defendants where the cost of defense was greater than the amount claimed. Mr. Durie, in the opening brief, you continue to assert the case should be remanded to state court because the damages are less than $5 million. That's on page 3 of the blue brief. I am aware of that. Per plaintiff, 3,000 plaintiffs, that would be $45 million. Yes, Your Honor. Well, in excess of the $5 million threshold. Please. Please. So, which is it? The court meets the class action fairness standard of $5 million or more. Could you speak up? I can't hear you. We are not arguing that the court lacked jurisdiction. While that's mentioned in the jurisdictional section, that's not mentioned in any of the points we are asserting here. We recognize that $15,000 times 3,000 claimants is more than $5 million. That's good of you. And, in fact, if you're not contesting the amount in controversy anymore, then we, of course, would always look at it. But the district court seems to have thought that the legal certainty test wasn't met. I have a different jurisdictional question for you. We've asked you on a number of occasions to elaborate on the diversity allegations. And CAFA also has a provision that provides that if more than two-thirds of the plaintiffs and any of the primary defendant are from a single state, then there's no jurisdiction. And I'm not aware of any place where you've told us much about the citizenship of the unnamed members of the class. And there's actually a mandatory withdrawal of jurisdiction under 1332d-4 in this circumstance. So do we have in the record where these people are from? We do not have anything specific as to the citizenship of the putative class members other than that they are primarily not from Illinois. They're out of state. But is that good enough? Because the, as I was saying, 1332 is very specific about the fact that cases that primarily deal with one state, here it is, I knew I had this here, 1332d-4 says a district court shall decline to exercise jurisdiction over a class action in which greater than two-thirds of the members are citizens of the state where it's filed, and at least one defendant from whom you're looking for significant relief is a citizen of that state. I can state to Your Honor that two-thirds of the putative class members are not from the same state. They're scattered throughout the United States. Well, this court has asked a couple of times, I think you should file a supplemental statement to that effect because we've asked and asked for you to give us complete jurisdictional allegations, and in Class Action Fairness Act cases, the number of people from a particular state makes a difference. I will do that, Your Honor. I thought we had complied with the court's request. We did list the citizenship of all of the named plaintiffs. But that's not, as you could hear, that's not the only thing the statute is concerned about. Yes, Your Honor. So I will file something indicating that two-thirds of the putative class members are not from the same state. They're scattered throughout the United States. Okay. So be as specific as you can about that because just saying sort of a ballpark is not really what the statute is looking for. I will do that, Your Honor. Okay. Now, I'll tell you, you know, cutting to the chase in terms of the various theories you've presented, there are a couple that I'm really having trouble with because, for example, the personal guarantees are something that people do put into contracts, and they make a difference because a suit on the guarantee is under a 10-year statute of limitations as opposed to a 4-year statute. Another thing that you had apparently you've abandoned here, I guess, was your argument that the price for these machines was just too high, and that doesn't seem to be something you're pursuing here. Well, that's not a specific basis for a claim that the 3,000 lawsuits were meritless, but it is background information. Getting back to the basic facts, 3,000 small claims cases were filed against out-of-state defendants. The cost of defense is greater than the amounts claimed, and we contend that the lawsuits were also without merit for four separate reasons, one of which is a number of the small claims defendants did not actually sign the guarantee agreements. Well, there you have perhaps a 9-B problem. The district court certainly thought you had a 9-B problem in terms of the specificity of your allegations about these alleged forgeries. Well, under the Illinois Consumer Fraud Act, you can go under deceptive practices, which is a 9-B standard, or unfair practices, which is an 8-A standard. But forgery, for purposes of the Federal Rules of Civil Procedure, seems to me the sort of thing that implicates 9-B, whatever Illinois law may be saying or not saying. Well, the claim on those is whether it's forgery or not, the guarantor did not sign the guarantee agreement he's being sued on, and we have alleged that the defendants in this case filed these lawsuits on an assembly line basis with affidavits attached where they had no knowledge of whether there was any truth or not in those. Well, you're rushing ahead of the forgery. I'm looking at 9-B, and it seems to me that an allegation of forgery is an allegation like fraud. Do you have any Federal cases that say 9-B doesn't apply to forgery cases? In the brief, I did cite a district court case from New York. Blum was one of the names, and a similar argument was made, and the court there ruled that the plaintiffs who claimed that their father's signature had been forged on a document did not know the circumstances under which the forgery occurred and therefore met the requirements of 9-B because they pled everything that they had any knowledge of, which is he didn't sign it. In this case, we have the allegations of the plaintiffs that they did not sign the guarantee agreements. That didn't apply to all of the plaintiffs. There were three of them, right? I believe there were three, and in fact, one of them got a judgment in the small claims case in her favor on the grounds that she didn't sign it, and it's the final judgment, and Pushpin did not appeal. So there, we would submit, in terms of meeting the requirement of forgery, where Pushpin used aggressive marketing tactics, as we have alleged, and took a number of either unauthorized or forged signatures on these guarantee agreements that the fact that those small claims defendants did not actually sign the guarantee agreement is an element of the unfairness under the Consumer Fraud Act, that if you sue someone where the amount claimed is less than the cost of defense and it's out of state, and in addition, they didn't sign the guarantee agreement they're being sued on, and none of these lawsuits are against the lessees. But that's a sweeping claim. You know, if you think that the courts should not entertain any claim brought by an out-of-state party where the cost of defense is going to exceed any kind of recovery, I'm not familiar with any such doctrine, and sometimes people are in it for a long-term investment, maybe not just that particular suit. It's a very sweeping position, and I'm also not sure, by the way, with the forgery claim, how that is going to meet any kind of commonality standard for class actions. That is a subclass, not all. On page 7 of the reply brief, the plaintiffs have asserted that Wynne, Mr. Wynne, did not sign the lease or guarantee. But then if you look at page 27 of the opening brief, the plaintiffs claim that Wynne signed the lease as a sole proprietor under a trade name. Which one is true? The reply brief, Your Honor, that was a misstatement in the opening brief merely for making the point that Kristen Wynne was both a lessee and a guarantor, and therefore the guarantee was illusory. I see the white light is on. I would like to cite to the Court the case of Suez or Suez, S-U-E-S-Z, versus MedOne Solutions, 757, Fed 3rd, 636 at page 645, which I would submit to the Court is of significance because, although that case was decided under the Fair Debt Collection Practices Act, it cites the Federal Trade Commission report on fair venue standards and abuse of forum, and the Section 2 of the Illinois Consumer Fraud Act specifically points out that in applying the act, the courts are to look to the federal court decisions in interpreting and applying the Federal Trade Commission Act. And what do you regard as an abuse of forum? I'm sorry, Judge Bleser? What do you regard as an abuse of forum? Yes, and in that case... What is an abuse of forum? Filing 3,000 lawsuits against out-of-state defendants in the small claims court. Where should they file them? Where should the claims be filed? Where the small claims defendants reside. What is really wrong with the forum collection clause here than the usual inconvenience that comes along with agreeing to a different venue? Well, when you combine that with the fact that the lawsuits were without merit, as we allege, Your Honor, it's an unfair practice under the Illinois Consumer Fraud Act. That seems to me to go right in the face of such Supreme Court decisions as the Carnival Cruise decision, which uphold forum selection clauses even in tiny fine print on the back of a cruise ticket. And this is surely no worse than that. Well, that case was not decided under the Illinois Consumer Fraud Act. It was not, but it was the Supreme Court talking about the enforceability under contract law of somebody who agrees, albeit they didn't probably know they were doing this, but agrees to a forum selection clause. Judge Wood, in that case, the underlying claim was with merit. In our case, the underlying claims are without merit. But that's a separate issue. The fact that they're without merit, Judge Bosner? The validity of the forum selection clause is a separate question from whether there's merit to these claims that Judge Wood filed. I understand, Judge Bosner. And we submit that when you combine the unfair forum with the fact that the lawsuits are- I don't think you can combine that way. I don't understand that. Well, the issue is- The forum selection clause is valid. That takes it out of the case. The- You don't combine it with something else in order to make the pushpins seem worse. Submit to the court that the use of the unfair forum while also- I also don't understand your argument that it's improper to bring a suit, bring a claim, if the defendant's costs of defense will exceed the claim. Actually- Defense costs the defendant might have to shoulder. You couldn't have a rule which said you can never bring a claim which is smaller than what it might cost to defend against it. How could that be? Judge Bosner, again, I would refer the court to the- Then you'd never have any small claims, right? You couldn't litigate a small claim because the defendant would say, well, look, to defend against this claim for $10 would cost me $11. So you can't ever collect a small claim. I would refer the court to the- How do you collect a small claim? I would submit not by suing, for example- I don't understand you. How do you collect a small claim? Don't tell me what it's not. How do you do it? Well, if it's covered by the Fair Debt Collection Practices Act, it has to be filed where the consumer resides or signed the contract. In this case, all of the plaintiffs qualify as consumers. But wouldn't you still argue that the defense cost exceeded the claim, the value of the claim? You're just assuming they won't if you sue in a more convenient place, but I'm not sure that's, I think, what Judge Posner is getting at, is that may not be a well-founded assumption. Go ahead and ask the question. You just noted that they're all consumers, but I need an explanation of this. It just seems that these are small business plaintiffs who are trying to use consumer protection laws that are meant only to protect unsophisticated consumers. What use would, for instance, consumers have for leasing credit card processing equipment? Why are you calling them consumers rather than, you know, small business? Your Honor, Judge Rotner, they are consumers under the Illinois Consumer Fraud Act, which defines consumer as anyone purchasing goods or services. It's a broader definition than the Fair Debt Collection Practices Act. For example, there's a case of Shahd Khan, who's a wealthy businessman from Bloomington who owns the Jacksonville Jaguar NFL football team that was qualified as a consumer by the Illinois Supreme Court, and I would follow up and cite that case to the court if I could. So what defines a consumer under the Illinois Consumer Fraud Act is what's at issue here, and that's a much broader definition than the Fair Debt Collection Practices Act, for example. So they do, and Judge Koukouras found that they qualified as a consumer. He ruled against the plaintiffs on other grounds, but not on the grounds that they don't qualify as a consumer. So once they qualify as a consumer, if you look at the report by the Federal Trade Commission on forum abuse, which is cited at page 645 of the Med One Solutions case, it points out that forum abuse is an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear. In the case of Joseph Fred Garcia, he's in the state of Washington. He was defaulted because he didn't make a 4,000-mile round trip. He was representing himself. He did file an answer to attend a status conference solely for the purposes of obtaining a later trial date, which would require another trip, and that's an unfair practice. Okay. Your time is up, so thank you very much. Thank you. Apparently my rebuttal time is up too.  We'll see if we need to give you a little more. Thank you, Your Honor. Mr. Hirsch. Good morning. May it please the Court, my name is Jason Hirsch, and I represent the appellees in this matter. Why did you cite 79 cases? Excuse me? Why did you cite 79 cases? We cited 79 cases because we did believe that they supported our position. If it was excessive. Could you speak up, please? Excuse me. We cited 79 cases because we believe they supported our position. Well, it's ridiculous to cite 79 cases in a brief. I apologize. Do you think we're going to read 79 cases? I apologize to the Court. I didn't mean to place an undue burden on the Court. You waste your client's money as well as the judge's time. Certainly in the future I will take that to heart and not do that. What is the status of the parallel proceeding in Blankenship, the case that's before Judge St. Eve? I'm wondering if these suits are identical and why they weren't consolidated in the district court. And, you know, the plaintiff's claim that she reached the opposite conclusion on the claims involving the allegedly forged signature. So I'd very much appreciate if you could bring us up to date on that suit. Absolutely. I think you asked two questions. First, what's the status of it? The parties are talking amongst themselves, and the case will likely be disposed of soon. But more importantly, the second question, which is why weren't they consolidated, it dockets 69 in the record in the district court, and despite the fact that initially the defendants had asked that the cases be consolidated, the plaintiffs in this case vigorously contended that the claims were, in fact, different. And Judge Kocouris on that basis denied the request to consolidate, agreeing that the cases were, in fact, different. I found it hard to believe that in this case the plaintiffs were actually on appeal saying, look to Blankenship. However, in the district court, having very vigorously argued that the cases are comprised of different claims that shouldn't be consolidated. Well, gosh. So I want to follow up on this forgery business, because Rule 9b is not a rule that asks for the impossible. And it seems to me that forgery is the sort of thing uniquely that one can look at a piece of paper and say, that's not my signature, but it is utterly impossible without litigation going forward and discovery to know that you're the one who signed my name instead of me, or Judge Posner signed it instead of me, or anybody else on the planet did so. And so I'm not sure that there's any specificity that's reasonably possible that this particular subset of the class didn't furnish. And in that instance, the plaintiff cited Blum. The district court, however, cited a case of Vann. I'm asking you, though, to tell me, how do you envision 9b? Forget about those cases. How do you envision 9b working other than having somebody swear under oath, that's not my signature? In this instance, I think they have to plead more. What is it that you want them to say? It doesn't look like my signature? I put little squiggles on the end of, you know, or I put hearts over my eyes, or, you know? I think it's what the district court said in Vann, which is they have to say, I don't acknowledge this transaction. This wasn't my transaction. They say it's not my signature. Isn't that the same thing? What's the difference? That's exactly the same. I don't see why their allegation as to this part of the case, you know, and there are lots of other parts of the case too, but as to this part of the case, how do they know what we like to say, you know, the who, what, when, why, you know, et cetera? I think it's the plausibility, Sarah. I think it's implausible to say, I didn't sign this, but at the same time to recognize the transaction. Why? Why? Because they're acknowledging the transaction. They're acknowledging that they were bound by a transaction. What have they done since they're actually suing, they're trying to sue in this circumstance where it's extremely inefficient for them to bring this lawsuit? A great number of people being told in order to recover $3,000, you have to spend $7,000, would just take their lumps and lose the $3,000, and there's no issue preclusion in those circumstances. You yourselves argued that Park Lane Hosiery is very careful to say, if you want to talk about non-mutual offensive issue preclusion, and Illinois itself recognizes equitable exceptions to that. I just don't see how they've acknowledged anything, how they have done anything but say, this isn't my deal. The record doesn't show, you know, they have these crummy credit card processing machines in their businesses. I think some of them have said they didn't have a machine. The first they knew about all this is that they wind up getting sued. I think it's a plausibility standard. I think in the first instance they have to allege that they didn't acknowledge the transaction, the transaction never occurred because they didn't sign. Why does that add anything to saying it's not my signature? Twombly and Iqbal are not supposed to create a pleading burden that nobody can meet. That's not what the word plausible means. I understand that. I just think it's difficult to believe that something is forged if someone is acknowledging the transaction. But I don't know how they've acknowledged the transaction. You have not explained that. They have said it's not my deal, and they have said that there are some people who didn't have machines, that who weren't paying, who shouldn't have been sued at all. Ms. Wayne is the perfect example, which is the one the district court relied on, that said in the same paragraph where you say it was forged, you acknowledge that you were the lessee in making the argument about illusory guarantees. But to boot as well, here we're talking about the Illinois Consumer Fraud Act. It's not just forgery. They have to plead something, I think, a little bit more because they have to plead that we filed this stuff with knowledge. They're basically saying, look, we didn't sign this. You get an assignment of this agreement, and now you file suit. And so if you're wrong on any of these, it's an unfair lawsuit, it's a meritorious lawsuit, and you committed a consumer violation. There's no allegation of any sort here. But there are allegations. I'm not following you at all because the consumer, the Illinois statute, covers both unfair practices and deceptive practices. You would agree, I hope, that the Illinois Supreme Court has said that these are two separate theories. And I think you should agree also that under the unfair practices branch of this statute, there's no reliance requirement. The Illinois Supreme Court has identified the criteria that are there. Does it offend public policy? Is it immoral, unethical, oppressive, or unscrupulous? And does it cause substantial injury? That's not a reliance requirement. I absolutely agree with the Sperry factors. I don't think that suing on an instrument that someone then later claims to be a forged instrument falls under public policy, falls under substantial injury. Really? You don't think there's a public policy in Illinois against enforcing contracts against people whose signatures were forged? No, I think there are instances all the time where cases are filed and ultimately there are defenses. And you're talking about commerce where agreements are being shifted from party to party to party down the line, assuming that the last party holding the bag knows and has any reason to not sue. For instance, if there was a bank failure and the FDIC liquidated assets in the acquiring institution, then sues on the notes. And one of the note holders or note borrowers says, I didn't sign this note. But there you, in the area of commercial paper, you have well-established defenses for bona fide purchasers without notice of the paper who buy for value. This is a different situation. This is a lawsuit directly against these small businesses who supposedly got these machines. There's a lease agreement. It's both a lease agreement. They're all combined lease and guarantee agreements, so it's not like they're two separate pieces of paper. They're all one and the same. I believe in the commercial context where this type of issue is happening all the time, we should, if not apply, but look to those types of standards because how can we say? Not if there's a different doctrine that changes your liability exposure. Well, the doctrine is unfairness. No, but you agree that there's a BFP defense with commercial paper. There's no BFP issue in this case. Absolutely, but what there is is a standard of unfairness, and if you're looking at the allegations as pled, why would anyone treat that as unfair if you allege that a party is just taking assignment down the line? But that's not what's happening. I mean, it's a completely unhelpful analogy, I think. I apologize, but I really think that if you don't plead. People are allowed to plead in the alternative. They can say my signature was forged, and maybe that's their main defense, but they can also say, and by the way, this whole thing is an unconscionable agreement anyway. But in this instance, Ms. Wayne did not plead in the alternative. She absolutely didn't. She said, I am the leasee, therefore you can't enforce it, and by the way, I didn't sign it. Even the small claims court looked at Ms. Wayne's affidavit, and this is what I think the district court found compelling and said, I find it flimsy. It could be crafty wording. I'm not particularly impressed by it. And that's basically what they then pled here. And Judge Kokoros said, well, how is that going to satisfy the Rule 9 standard? And we are being asked to review Judge Kokoros' decision. So we need to know more than just the fact that Judge Kokoros, we all like Judge Kokoros, but we are being asked to review his decision. Absolutely. On page 27 of the response brief, you state that none of the state court collection action involved guarantors. Who did Pushpin sue in state court? I was under the impression that the statute of limitations for the lessees expired after four years. And so Pushpin sued the guarantors because of the more generous 10-year statute of limitation for guarantees. Where am I mistaken here? Are you asking, did Pushpin sue guarantors in the state small claims cases? Well, I mean, you stated that none of the state court collection actions involved guarantors. I'm asking who Pushpin sued in state court. If that's what it said, if that was a mistake, and I apologize. My God, there are a lot of apologies today. The Pushpin absolutely sued guarantors and only sued guarantors in the state small claims cases. The statute of limitations as to a guarantee is 10 years under 735. We know that. We know about that. So you're saying that you sued only guarantors in this, yeah, the guarantors. We sued on the guarantees, correct. 3,000 guarantees. Absolutely, each one individually. Every one of them. Where's Pushpin organized? It's an LLC. I believe it's organized in Delaware. And were we told, I should look here, about all of its, yeah, we know who lies behind it or not. I believe that was laid out, yes. That's what? I believe that was all laid out. We included a subject matter jurisdiction section in our brief. And I'm looking at it, which just says Pushpin Holdings, jurisdictional statement, minimal diversity. I think you should probably file a supplemental jurisdictional statement, too. Maybe you can tell us where it is. Yeah, what page are you thinking about? Are you thinking about parent corporations, CIT Financials, the Delaware Corporation? Is that what you're thinking? Yeah, and I believe also that the plaintiffs laid out. The plaintiffs on page two give the names of a number of places. They get as far as retirement accounts for Ephraim Landau and Chaim Landau and Daniel Brush, 401K accounts, information, belief, all citizens of New York, which you didn't just mention. I think this is kind of a mess jurisdictionally. It is a mess. That's for sure. So you can file a supplemental statement, too. Absolutely. I just want to quickly touch base on, I want to summarize first. I don't believe that anything was alleged here that was a deceptive practice or an unfair act under the Illinois Consumer Fraud Act. But now turning, because I think there was a lot of questioning. I can't hear you either now. I'm sorry. You know, we're older. Sorry. There was a lot of discussion on the Consumer Fraud Act. I'd just like to quickly turn to abusive process and malicious prosecution, which were the two other claims filed by the plaintiffs here. The abusive process claim, I think that the district court correctly decided those issues. And I understand that this court is here to review that decision. But here, there was no ulterior purpose alleged. What was alleged was that Pushpin filed a lawsuit to win. That's exactly what happened here. They went to court and tried to obtain judgments. And the use of process in that proceeding, the issuance of summons, the filing of complaint, isn't an irregular use or an improper use of process. It was simply used to actually commence a case and obtain a judgment. And just lastly, on malicious prosecution, there was no special injury alleged here. All that was alleged was the basic time, annoyance, and harassment of defending a lawsuit. And by all accounts, that is not sufficient to state a claim for malicious prosecution. Thank you for your time. No, no. My time is still running. On page 19 of the reply brief, the plaintiffs argued that the guarantee language in the leases related to continuing liability applies only in the event of the death of a guarantor. And I'd like you to respond to that assertion because you haven't had a chance. I appreciate that. I've read that guarantee up and down. I do not believe that the continuing guarantee language is limited only to the death of the guarantor. The language of that guarantee is very specific. It says that essentially it's unconditional, that it's continuing, that the creditor can deal with any guarantor, any debtor, or it doesn't have to deal with them. Or it can release any of them without releasing the guarantor. Under this guarantee, essentially, the creditor can do whatever it likes without absolving the guarantor of its responsibility. Okay. Well, I guess. Thank you. Anything else? Thank you. All right. Thank you very much. Your time expired, Mr. Jury, but I'll give you one minute. I really mean one minute. I'm going to cut you off in the middle of the word. Three quick points. Twelve of the small claims cases were defended by me. They all resulted in judgment in favor of the small claims defendants, and Pushpin deliberately did not appeal. I would also point out that the guarantees are strictly construed in favor of the guarantors, which is a favorite of the law, and the language that Judge Robner was just referring to only provided for a continuing guarantee upon the death of the guarantor, not upon the inability of the lessee to pay. And then I would refer the Court back to Seuss v. Medwin Solutions and its reliance on the Federal Trade Commission and the report on venue unfairness and the Section 2 of the Illinois Consumer Fraud Act, which applies the Federal Trade Commission rulings and federal court rulings in determining what's unfair. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.